## Keller Trust

*Carl E. Kirschner* and *John H. Bigelow*, for petitioners.

*Frank Gormley*, for trustee.

*Martin D. Cohn, Nicholas Piazza* and *John E. Cotsack*, for claimants.

SELECKY, P. J., April 25, 1960.—This matter came before the court at the time of the audit of the third and partial account of the trustee of the trust inter vivos of Harry P. Keller, upon a petition of certain donees containing a request to the court to direct the trustee to make distribution of a portion of certain general pecuniary gifts. Since this is the third petition of a similar nature to this court, the issue before this court is whether there has been a sufficient change of circumstances since the previous requests to warrant this type of partial distribution at the present time, which the court hesitated to allow on two previous occasions.

As in the case of a will or testamentary trust, the intention of the settlor in this instance is the polar star in the construction of this trust inter vivos, and this intention must be ascertained by a consideration of the trust inter vivos and its two amendments, which must be read in the light of the circumstances surrounding the settlor when he prepared this agreement and its amendments: Conlin Estate, 388 Pa. 483, 486, 488 (1957).

This trust inter vivos and its two amendments generally set up an annuity for Thomas Garbacik, Sr., now 51 years of age, and Julia Garbacik, his wife, age 47, in the sum of $3,000 per year, payable until the death of the survivor. This court has the benefit of the previous ruling of this court, speaking through a previous judge, that: "In our opinion what the Garbaciks have is an annuity and a general legacy. It was the expressed intention of the settlor that their annuity and general legacy be preferred over the other legacies provided in the trust instrument and its amendments": Page 10 of report on audit filed June 15, 1955.

Thereafter, the settlor listed several pecuniary gifts and provided that any residue should then be divided among some 15 charitable beneficiaries.

The payment of these pecuniary gifts, sometimes called legacies by previous judges, is governed by paragraph four of the amendments to the trust inter vivos dated March 7, 1949, which reads as follows:

"4. As soon after my death as my Trustee feels advisable in view of the possible frozen nature of my assets and the Federal tax liability that might be assessed against the Trust by my executor, the Trustee is directed to make the following payments. If the makeup of the assets of this Trust are such that liquidation would work a hardship on the Trust, the Trustee may make partial distribution as soon after death as practicable, without being liable for any interest on the unpaid portion. The decision of the Trustee in this matter is binding on all parties concerned."

This court, speaking through a previous judge, refused such partial distribution in 1955, stating as its reason therefor:

". . . in the present position in which the trustee finds itself it cannot possibly pay the pecuniary legacies in whole or in part and at the same time feel that

it can carry out to the letter the expressed intent of the settlor. In our opinion, the fund in the hands of the trustee should be devoted primarily to the payment of the annual payments to the Garbaciks. Until the time comes when the necessity for the annual payments to Garbaciks ceases or until the funds in its hand are such that payment can be made to the pecuniary legatees, the trustee is directed to keep intact the funds in its hands.

"We in no way close the door to a possible future application by the trustee, or other party in interest, to renew application to this Court, upon proof of a different set of circumstances other than now presented, for the payment of the pecuniary legacies, at least in part": Page 9 of report of audit filed June 15, 1955.

This reasoning was adopted verbatim by this court, speaking through another judge, in disposing of the second petition in its order filed June 25, 1957.

The question before this court is whether there has been that "proof of a different set of circumstances" which would move the court and the trustee to authorize at least a partial payment of the pecuniary gifts under section 802 of the Fiduciaries Act of 1949, which reads:

"When a sum of money is charged upon real or personal property by will, inter vivos trust or decree, and is payable at a future date, the court having jurisdiction of the estate or trust, upon petition of a party in interest and after such notice as it shall direct . . . may enter a decree not contrary to any express provision in the will or trust instrument, exonerating and discharging such portion of the real and personal property charged as to it may seem beyond the amount requisite for providing a sufficient continuing security for the payment of the charge . . .": Act of April 18, 1949, P. L. 512, art. VIII, sec. 802, 20 PS §320.802.

It would seem that this trustee received sufficient authority under paragraph four of the amendment of March 7, 1949, to this trust inter vivos, cited supra, to take upon itself the determination of whether or not such partial distribution of these gifts should be made at the present time, without being fortified by any approval of this court, especially since said direction to the trustee provides: "The decision of the trustee in this matter is binding on all parties concerned."

The trustee, through its trust officer, in the hearing before this court on August 18, 1959, indicated, nevertheless, that it was hesitant to do so and that it would prefer to follow the suggestion of this court.

The trustee must carry out the intention of the settlor in assuring the payment of the $3,000 annuity to Thomas and Julia Garbacik so that any reduction of the principal of this trust should be allowed only when it will not imperil the continued payment of said annuity. A reading of the trust agreement reveals that the trustee has the power to invade the principal if necessary to assure payment of this annuity. But an invasion of the principal in order to make partial distribution of the pecuniary gifts may not only imperil the income-producing quality of the balance but might lead to a reduction of the residue which is distributable to 15 charitable beneficiaries, all of whom must likewise be protected by the trustee.

The court notes of record that proper notice was given to not only the specific donees of these gifts, which were to be paid "As soon after my (settlor's) death as my Trustee feels advisable", but also to all of the 15 charitable residuary beneficiaries. The court further notes that John E. Cotsack, Esq., was appointed guardian ad litem for certain minor children of the Garbaciks who are donees of gifts, and Carl E. Kirschner, Esq., was appointed guardian ad litem for certain minor Johnston children, who are donees, so

that all parties have had notice. No one has filed any answer or presented any objection to any partial distribution at this time.

The trustee is cautioned, in paragraph four of the amendment of March 7, 1949, to the trust instrument, to determine whether total or partial distribution of these pecuniary gifts should be made only after examining the nature of the estate with these considerations in mind: (1) "The possible frozen nature of my assets"; (2) "The Federal tax liability."

This paragraph further indicates that "If the make-up of the assets of this Trust are such that liquidation would work a hardship on the Trust, the Trustee may make partial distribution as soon after death as practicable . . ." The settlor's intention is clear that he wanted distribution to be made soon after settlor's death and cautioned delay and partial distribution only if the liquidation of the trust and the tax burden would cause a serious shrinkage. It was these considerations that made this court hesitate to authorize a partial distribution on the two previous occasions.

The testimony taken before this court indicates that the corpus of this trust has increased from $123,000, in round figures, as of 1955, to $140,000 as of August 11, 1959, book value; but that the market value as of the close of the market on August 11, 1959, was $159,884.24. The testimony further showed that the trustee, which hesitated in 1955 to make any partial distribution, was able to liquidate "the possible frozen assets" of the estate at a figure $19,000 above that used by it in its inventory. The Federal tax liability has already been settled by payment from the principal of the estate, under the direction of this court, so that we now find that the estate is liquid, that all the tax liabilities have been met, and that the corpus of the estate has, in fact, been increasing and not decreasing, even taking into consideration the receipt of cer-

tain additional moneys from the estate of Harry P. Keller, now deceased. It would appear that, in addition to the gain on the liquidation of the assets, previously recited to be in the sum of $19,000, there is an additional gain of more than $12,000 by appreciation of the value of the assets.

Two expert witnesses, with intimate knowledge of securities, their income, etc., Messrs. J. A. McHale and Arthur J. Whitaker, corroborated by Robert J. Gicking, a trust officer, indicated that the corpus of this estate, using the current income yield, (3.67 percent on book value or 3.37 per cent on market value) was earning more than was necessary to pay all the expenses, income tax, costs and the $3,000 annuity. They testified that if a partial distribution of 50 percent were made to the donees, considering the fact that there would be a recoupment of proportionate shares of the Federal estate tax and the Massachusetts inheritance tax (the settlor, Harry P. Keller, died April 7, 1953, a resident of the Commonwealth of Massachusetts), there would still be sufficient assets in the corpus of the estate to yield an income that would more than provide the $3,000 annuity to Thomas and Julia Garbacik for the rest of their lives, and all expenses, income tax, etc., of the estate, and still leave the corpus intact for the payment of the balance of these gifts, upon the death of the survivor of the Garbaciks, without resulting in an invasion of the principal to the detriment of the 15 charitable residuary beneficiaries of this estate. The total specific pecuniary gifts amount to $79,500, so that a 50 percent distribution would total $39,750. From this would be recouped approximately $8,000 for Federal estate tax and Massachusetts inheritance tax, so that the corpus of the estate would be this reduced by approximately $31,750. The testimony of these experts was that, after this reduction of the corpus, the balance would

produce sufficient income to pay the annuity, etc., without any resulting invasion of the principal.

The settlor indicated a desire for at least a partial distribution shortly after his death and it is now seven years since his death. If Julia Garbacik is to enjoy her gift of $5,000 (Thomas Garbacik's gift of $5,000 has been settled by a cancellation of his indebtedness to the estate), in addition to her annuity, as directed by the settlor, she must receive some part of this gift while she is still alive. To wait until these annuitants die before making payment of her gift, when it seems clear that such partial payment will not imperil the continuation of the annuity payment nor prejudice the residuary beneficiaries, would be running counter to the settlor's expressed intention. Moreover, the Garbacik children are just starting out in life and are in greater need of these funds now than they may be when they are more settled in life. The Johnston children likewise show a present need, since David Johnston is now a law student and Harry Johnston is a medical student.

It would appear that the settlor's concern as to the frozen nature of the assets of the estate, as to any loss in the liquidation, and as to the tax shrinkage, has been resolved happily in that the estate is now liquid and is larger now than it was originally and that the income is more than sufficient to take care of the annuitants, the prime concern of the settlor of this trust.

Although, as we have indicated previously, the trustee in this instance has complete power to use its discretion in making partial distribution, and its decision is binding upon all parties, under paragraph four of the amendment dated March 7, 1949, since the trustee has looked to this court for guidance as to its exercise of this discretion, it is hereby decreed that the trustee may make a partial distribution of 50 percent of the general pecuniary gifts to all of the donees

540

enumerated in said trust inter vivos agreement, as amended (it is understood that the portion of the $5,000 gift to the Hazleton YMHA and YWHA will be paid to the Hazleton Jewish Community Center, their successor), with the understanding that the trustee will recoup therefrom the proportionate burden of the Federal estate tax, Massachusetts inheritance tax and any other tax. It is further suggested that the necessary guardians be appointed for the minors involved and that the trustee carry out the direction of this court, found on page 10 of the report on audit filed June 15, 1955, as to the deduction from the minor legatees the fees for services of the guardians ad litem prior hereto. As to the fees of the guardians ad litem and any other costs of the instant proceeding, the direction of this court is that such costs and fees shall be deducted from the principal of the trust as part of the cost of the general administration of said trust. It is further suggested that a copy of this partial distribution, showing all recoupments, deductions and costs, be sent to all the beneficiaries of said trust, including the annuitants, the pecuniary donees, and all the charitable residuary beneficiaries.